UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO. 1:24-CV-576

| | | |
|---|---|---|
| KATRINA COLE on Behalf of Herself and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § § | PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CONDITIONAL CERTIFICATION |
| v. | § § | |
| UNIVERSAL HEALTH CARE/BLUMENTHAL, INC. and CHOICE HEALTH MANAGEMENT SERVICES, LLC | § § § § § | |
| Defendants. | § § | |

## I.    INTRODUCTION

Plaintiff Cole seeks to represent a narrowly tailored class of hourly, non-exempt patient care employees who were subject to Defendants' common policies that deprived them of pay for hours worked "off-the-clock" during their unpaid automatically deducted meal breaks. Plaintiff Cole satisfies her lenient burden, and conditional certification is appropriate.

## II.    ARGUMENTS AND AUTHORITIES

**A. Conditional certification requires a lenient showing.**

Defendants ask the Court to apply a heightened standard because the parties have engaged in some discovery limited to the issue of conditional certification. But "the majority of courts within the Fourth Circuit have declined to impose such a heightened

1

standard at the notice stage, reiterating that the second-stage occurs **only after discovery on the merits is virtually complete**[.]" *McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2016 U.S. Dist. LEXIS 199392, at *26 (E.D. Va. July 29, 2016) (emphasis added). Indeed, where the district court bifurcated discovery, "limit[ing] discovery [to] the issue of whether the proposed collective action members are 'similarly situated,'" courts in this circuit generally refuse to heighten plaintiff's lenient burden. *See, e.g., Houston v. URS Corp.*, 591 F. Supp. 2d 827, 830-31 (E.D. Va. Dec. 17, 2008); *McNeil*, 2016 U.S. Dist. LEXIS 199392, at *27-28; *see also Clinton v. Gov't Emplees. Ins. Co.*, 2017 U.S. Dist. LEXIS 110663, at *5 n.2 (E.D. Va. July 14, 2017).

In *Houston*, the court denied plaintiff's initial motion for conditional certification without prejudice and "ordered limited discovery on the issue whether the proposed collective action members are 'similarly situated' in sufficient respects to conditionally certify the collective action. *Houston*, 591 F. Supp. 2d at 830. Following the completion of this limited pre-certification discovery, the plaintiff renewed his request for conditional certification. *Id.* Despite the parties' pre-certification discovery, the district court utilized the lenient standard. *Id.*

Similarly, in *McNeil*, the court bifurcated discovery, "allow[ing] Plaintiff to begin discovery on the issue of nationwide certification, [but] not on the merits of the underling case." *McNeil*, 2016 U.S. Dist. LEXIS 199392, at *27. Despite the parties' discovery progress, the court emphasized "the fact that th[e] Court permitted some initial discovery pertaining to the conditional certification issue should not change the Court's standards[.]" *Id.* at *27.

2

Case 1:24-cv-00576-TDS-JEP    Document 28    Filed 05/27/25    Page 2 of 14

Defendants overestimate the amount of relevant precertification discovery has taken place in this case. Neither party has taken a deposition. While Defendants have produced a copious amount of documentation, over 100,000 pages, little of Defendants' production is germane to certification and appears to have been made for the purpose of advancing the argument that they have produced a lot of documents, a point which is clear from the fact that Defendants' response included only a total of eight bates labeled pages from its production. Had Defendants' voluminous document production been relevant to their arguments against certification, one would think more than 8 pages would have been appended to their response.

**B. Plaintiff has satisfied her lenient burden to demonstrate she and the putative class members are similarly situated .**

At the conditional certification stage, courts in the Fourth Circuit "require **nothing more** than **substantial allegations** that the putative class members were together the victims of a single decision, policy, or plan" alleged to violate the FLSA. *Randolph*, 7 F. Supp. 3d at 576 (emphasis added); *see McNeil*, 2016 U.S. Dist. LEXIS 199392, at *24.

In *McNeil*, plaintiff sought certification of a class of call center workers who were subject to the defendant's unpaid meal break policies that deprived them of pay for hours worked "off-the-clock." *McNeil*, 2016 U.S. Dist. LEXIS 199391, at *25-27. With the motion, the plaintiff submitted declarations from herself and other putative class members who worked for the defendant in different call centers. *Id*. at *26-27. The defendant submitted declarations from other employees who worked for it, claiming they did not

3

work off-the-clock. *Id.* at *30. The court emphasized the defendant's "evidence is not enough to deny class certification at this stage, because all that is necessary is for Plaintiff to **allege** and provide some support for a company-wide policy that could violate the FLSA." *Id.* (emphasis added). The court found plaintiff's evidence "sufficiently alleged that the putative class members … are similarly situated [by] … provid[ing] more than mere allegations detailing a common practice of rounding time that, when combined with [defendant's] five-minute policy, represents a substantial allegation that the employees were similarly situated victims." *Id.*

Similarly, Plaintiff seeks collective treatment for a specific type of worker (Defendants' hourly patient care employees) who were subjected to Defendants' standardized payroll policies that deprived them of pay for the hours they worked "off-the-clock" during their unpaid meal breaks. Thus, because Plaintiff demonstrates she and the Putative Class Members "were together the victims of a single decision, policy, or plan" alleged to violate the FLSA, conditional certification is appropriate. *McNeil*, 2016 U.S. Dist. LEXIS 199392, at *24.

Indeed, Plaintiff has provided substantial allegations that Defendants subjected her and the Putative Class Members to uniform policies and practices that fail to compensate these patient care workers for all the hours they worked "off-the-clock" in violation of the FLSA. To prevail on a claim for unpaid missed or interrupted meal breaks under the FLSA, a plaintiff must prove that (1) she performed compensable work during meal breaks for which she was not paid; and (2) the employer had "actual or constructive" knowledge that

4

she worked during meal break without pay. *Roy v. Cty. Of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998).

Here, Plaintiff sufficiently alleges Defendants have a uniform policy to automatically deduct 30 minutes from their patient care employees' time each day they work for their meal break. This is a written policy promulgated by Defendants that Defendants acknowledge apply across all facilities. But, Defendants do not pay Plaintiff and the Putative Class Members for this daily 30-minute break regardless of whether they receive or miss their meal break and regardless of whether their meal break is interrupted.

Critically, as Plaintiff's allegations and evidence demonstrate, employees subjected to Defendants' unpaid meal break policy are rarely able to take a bona fide 30-minute uninterrupted meal break or one that is not subject to interruption. Plaintiff and the witness statements submitted with her motion allege all of Defendants' patient care workers—regardless of their specific facility—have an ethical obligation to assist the patients under their care, even during their unpaid meal period. The ethical responsibilities of healthcare workers to care for their patients should not be a controversial point. The inherent demands of the Putative Class Members' high-volume patient care work require these employees to regularly work during their unpaid meal periods.

Defendants claim their employees had the ability to seek reimbursement for their missed and interrupted meal periods by submitting a "Time Punch Correction Form," however, Plaintiff demonstrated Defendants have a systemic practice of discouraging these employees from submitting such forms if they miss (and report) their meal break. *See* Doc. 24-2, at ¶ 11-12. Furthermore, Plaintiff's evidence shows that the training that Defendants

5

did provide with respect to the "Time Punch Correct Form" only covered a missed break, not an interrupted one or one subject to interruption. *See* Doc. 24-2, at ¶ 10.

Finally, Plaintiff alleges Defendants were actually aware that she and the Putative Class Members regularly worked through their meal breaks because Defendants' supervisors routinely caused and/or witnessed the same.

Plaintiff satisfied her burden "to allege and provide some support for a company-wide policy that **could violate** the FLSA[,]" and that is "all that is necessary" at this stage. *McNeil*, 2016 U.S. Dist. LEXIS 199391, at *30 (emphasis added).

**C. Defendants' merits-based arguments are misplaced.**

Defendants spend much of their Response raising merits-based arguments, claiming their policies are not unlawful or that Choice Health did not employ Plaintiff or the Putative Class Members. It is well-established that "[a]t this early stage … the Court does not resolve factual disputes, decide substantive issues going into the ultimate merits, or make credibility determinations." *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 371 (N.D.W. Va. 2012) (internal quotations omitted); *see Gordon v. TBC Retail Grp., Inc.*, 134 F. Supp. 3d 1027, 1038 (D.S.C. 2015) ("the law is clear that courts should not weigh the merits at this point in the litigation" (citation omitted)).

*1. Whether Choice Health employed Plaintiff and the Putative Class Members is a merits-based determination not decided at conditional certification*

Choice Health maintains it did not employ Plaintiff or the Putative Class Members and therefore the Court should not include other Choice Health Facilities in any collective. But "Defendant[s]' arguments regarding employee status are premature. *O'Quinn v.*

6

*TransCanada USA Servs.*, 469 F. Supp. 3d 591, 608 (S.D. W. Va. 2020). Indeed, "whether an entity is liable under the FLSA as a joint employer is a merits issue" inappropriate for the notice stage. *E.g., Watson v. Jimmy John's, LLC*, 2015 U.S. Dist. LEXIS 166003, at *12 (N.D. Ill. Nov. 30, 2015); *see Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 855 (N.D. Ill. 2017) ("[g]iven the factual issues involved, … the joint employer question is typically addressed at the decertification or summary judgment stage."). Likewise, it is not until "the second step [that] the court considers whether the worker is an employee or independent contractor" as a matter of economic reality. *E.g., Presson v. Recovery Connections Cmty.*, 2019 U.S. Dist. LEXIS 115015, at *10 (E.D.N.C. July 10, 2019.

Even so, Plaintiff's supporting evidence sufficiently demonstrates Choice Health employed Plaintiff and the Putative Class Members, either jointly or as a matter of economic reality, because of Choice Health's managerial oversight of the operation of each nursing home under its control. Indeed, Choice Health promulgates common job descriptions, makes hiring decisions, makes payment decisions, and especially relevant here, issued the meal break policy that resulted in Plaintiff and the Putative Class Members being underpaid. *See* Docs. 24-1, at Responses Numbers 2, 4, 5, 7, 9, 16, 17; 24-3, 24-4.

### 2. *Plaintiff does not have to prove the underlying merits at the conditional certification stage.*

The liability issue here is straightforward. Defendants utilized a time keeping system that automatically deducted 30 minutes per shift and Plaintiff has presented evidence in the form of her own declaration and the witness statements from four other employees that cover a total of six of Defendants' facilities that all uniformly detail that

7

the effect of the automatic meal break deduction policy was unpaid work. The work was unpaid because the nature of the work frequently prevented Defendants' employees from being fully relieved for the entirety of a 30-minute meal break.

Under the FLSA's regulations, "[b]ona fide meal periods are not worktime . . . The employee must be completely relieved from duty for purpose of eating regular meals . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." 29 C.F.R. § 785.19(a). In the Fourth Circuit addressed the compensability of meal breaks when employees are on call in *Roy v. Cnty. Of Lexington, S.C.*, 141 F.3d 533, 544-45 (4th Cir. 1998). There, the court explained on the merits, the question is whether the time is "spent predominantly for the employer's benefit," in which case it must be compensated under the FLSA. *Id.* at 544. However, the conditional certification analysis looks at whether a plaintiff has shown adequate allegations to "provide some support for a company-wide policy that could violate the FLSA." *McNeil*, 2016 U.S. Dist. LEXIS 199391, at *25-27. A district court, in a case cited by Defendants, recently framed the issue in an unpaid meal break case in the following manner: "whether plaintiff has presented sufficient evidence to show that there were unwritten policies, consistently applied, that required putative collective members to work. . . during unpaid meal breaks without compensation." *Chapman v. Saber Healthcare Grp., LLC,* 623 F. Supp. 3d 664, 674 (E.D. Va. 2022). The *Chapman* court found conditional certification was appropriate at each facility where the employees submitted declarations describing uncompensated work during meal times. *Id.* at 678.

8

Case 1:24-cv-00576-TDS-JEP    Document 28    Filed 05/27/25    Page 8 of 14

Another court in this circuit also recently granted conditional certification in a meal break case over the same merits-based arguments Defendants make here in *Strickland*. *Strickland v. Charleston Area Med. Ctr., Inc.*, No. 2:23-cv-00676, 2024 U.S. Dist. LEXIS 82039 (S.D. W. Va. May 6, 2024). In that case, the employer argued it had no obligation to pay for meal breaks that were only subject to interruption, that any interrupted breaks that went unpaid were the result of the employees' failure to use the employer's time recording correction policies, and that even if unpaid work happened, the supervisors would not have known about it. *Id.* at *9. However, the court in *Strickland* granted conditional certification noting "the Court does not resolve factual disputes, decide substantive issues going into the ultimate merits, or make credibility determinations" at the conditional certification stage. *Id.* *11. Instead of crediting the employer's evidence to the contrary, the court in *Strickland* granted conditional certification because the employees submitted declarations that provided:

> Due to short staffing and ethical obligations to patients, patient care workers could not be fully relieved, and they described being interrupted more often than not during attempted meal breaks. Supervisors were often the ones interrupting employees and directing them to perform work tasks during meal breaks. The employees all stated that they were never taught how and when to edit their time to receive pay for the incomplete or interrupted meal breaks. They all understood that they would not be paid for meal breaks, even when they worked during those "breaks," and they all indicated that unpaid, working meal breaks were a frequent topic of complaints among other employees. Despite working in different patient-care roles in different departments with different supervisors, the employees recounted quite similar experiences. In short, the Plaintiff has presented evidence that he, and other patient care workers at CAMC Memorial and

9

> CAMC General, performed unpaid work on a regular basis
> during their meal breaks, with the knowledge of supervisory
> employees.

*Id.* at *12-13. This is substantially the same quantum of evidence provided by Plaintiff in her declaration and in the witness statements from the other nurses which provided that the automatic meal breaks were virtually always subject to interruption and actually interrupted multiple shifts per week because, unsurprisingly, patient care employees cannot say "no" to the medical needs of a patient. The evidence further provides the Defendants' supervisory employees knew of the interruptions because those employees were the ones doing the interrupting and because the supervisors knew about the low staffing levels at the facilities relative to the volume of patients. Furthermore, the evidence shows that, regardless of facility, Defendants failed to inform their caregiver employees that they should have been paid for interrupted breaks. *See* Docs. 24-2, 24-5 to 24-8.

**D. Defendants present no valid reason to disregard the statements submitted by other employees in support of Plaintiff's motion.**

Defendants request the Court disregard or strike the statements of four other of Defendants' employees that Plaintiff submitted with her motion. Defendants claim that the inclusion of these statements is improper because these witnesses were not disclosed in Plaintiff's Rule 26 disclosures and because the statements are not made under penalty of perjury. Defendants are wrong on both counts.

As to Defendants' first issue, Plaintiff clearly informed Defendants on her initial disclosures that she believed other of Defendants' employees would have knowledge

10

relevant to this case. Indeed, on her disclosures, which Defendants filed as Doc. 27-8, Plaintiff informs Defendants that "any and all FLSA class members" "have knowledge regarding the claims, damages, job duties, the time worked, pay practices of Defendants, and other issues material to this action. (Doc. 27-8, at page 3). Defendants face no prejudice from the consideration of these witness statements because Defendants know the identity of their own employees and Defendants will have ample time to obtain further information from these witnesses through discovery and any concerns about their credibility or knowledge can be addressed at the decertification stage or at summary judgment. Furthermore, it would have been impractical to update Plaintiff's disclosures with the names of the more than 1,000 putative class members that were not known to Plaintiff until Defendants answered discovery identifying those individuals.

As to Defendants' second issue, courts routinely do not require evidence submitted at conditional certification to meet the same standards of admissibility as evidence submitted at summary judgment or trial. Many courts have considered what admissibility standard applies to testimony submitted in support of a motion for conditional certification and determined that the evidentiary threshold required for summary judgment motions is too high at this stage. *See, e.g., Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013) ("Plaintiffs need not present evidence in a form admissible at trial at the notice stage."); *Reyes v. AT&T Mobility Servs., LLC*, 759 F. Supp. 2d 1328,1333 (S.D. Fla. 2010) (noting the evidentiary standard for conditional certification is "fairly lenient"); *White v. MPW Indus. Servs.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) ("[A]ffidavits submitted in support of a motion for conditional certification pursuant to § 216(b) need not meet the

11

standard set forth in Rule 56(e). To require more at this stage ... would defeat the purpose of the two-stage analysis.").

*Crawford v. Lexington-Fayette* is instructive on this point. *Crawford v. Lexington-Fayette Urban Cty. Gov't,* No. 06-299-JBC, 2007 U.S. Dist. LEXIS 6711, at *5 (E.D. Ky. Jan. 26, 2007). In that case, in support of their motion for conditional certification, the plaintiffs sent a survey to the putative class members which allowed the survey participants to fill in a blank to indicate if they were affected by the employment policies at issue, which was, like the instant case, a requirement by the employer to require work through meal breaks. *Id.* at *22. The plaintiffs summarized the results of those surveys in a chart that was presented to the court as conditional certification evidence. *Id.* at *4. The defendant objected to consideration of the chart because the surveys that underlined the preparation of the chart were not sworn. *Id.* at *8. The court was not persuaded and considered the chart as evidence in granting the conditional certification motion because of the lenient standard used in adjudicating conditional certification. *Id.* at *11. The statements from the four other employees included with Plaintiff's motion are much the same as the surveys in *Crawford*. Those statements allowed those witnesses to identify the frequency with which Defendants prevented them from taking a meal break. Those statements demonstrate that the employment practices that marred Plaintiff Cole's employment with Defendants were not limited to her nor the facility where she worked.

### III. CONCLUSION

Plaintiff respectfully requests that this Court grant conditional certification of the proposed collective action and approve her notice plan.

/s/ Wilson Fong
NC State Bar No. 50708
Hensel Law, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
will.fong@hensellaw.com


/s/ John Neuman
John Neuman (special appearance)
JNeuman@smnlawfirm.com
Texas State Bar No. 24083560
Sosa-Morris Neuman, PLLC
4151 Southwest Freeway, Suite 515
Houston, TX 77027
Telephone: (281) 885-8844
Facsimile: (281) 885-8813

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

  I certify that this document was filed through the Court's CM/ECF system on May 27, 2025 which will provide a copy to all parties of record.

            */s/ John Neuman*
            John Neuman

## WORD COUNT COMPLIANCE

  I certify that the foregoing brief does not exceed 3,125 words as limited by Local Rule 7.3(d)(1). The word count excludes the case caption, signature lines, and required certificates of counsel. In making this certification, the undersigned has relied upon the word counting feature of Microsoft Word, the word processing system used to prepare this brief.

            */s/ John Neuman*
            John Neuman