IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KATRINA COLE, on behalf of    )
herself and on behalf of all  )
others similarly situated,    )
                              )
            Plaintiff,        )
                              )
      v.                      )        1:24CV576
                              )
UNIVERSAL HEALTH CARE/         )
BLUMENTHAL INC., and CHOICE    )
HEALTH MANAGEMENT SERVICES, LLC, )
                              )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is a proposed collective action under the Fair Labor
Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and proposed class
action under the North Carolina Wage and Hour Act, N.C. Gen. Stat.
§ 95-25.1 et seq. Before the court is Plaintiff Katrina Cole's
motion for conditional certification of an FLSA collective. (Doc.
23.) For the reasons set forth below, the motion will be granted
in part.

## I.    BACKGROUND

At all times relevant, Defendant Choice Health Management
Services, LLC ("Choice") operated a total of seventeen nursing
homes in North Carolina and South Carolina, including Defendant
Universal Health Care/Blumenthal, Inc. ("Blumenthal"). (Doc. 24-
1 at 3-4.) Cole worked at Blumenthal as a certified nursing

assistant ("CNA") from 2015 until August 2023, except for an "approximate year break in [her] employment" at Blumenthal "from mid-2021 to July 2022." (Doc 24-2 ¶ 3.)

Cole claims that she and other "similarly situated, non-exempt, hourly-paid patient care workers" were denied overtime pay to which they were entitled under the FLSA because although Defendants had a practice of automatically deducting 30 minutes of mealtime from their pay, Defendants nevertheless interrupted the employees' lunch breaks and required them to work or be "on call" during them. (Doc. 24 at 1–2.) In a sworn declaration, Cole states that her meal breaks were interrupted daily, her supervisors were aware of these interruptions, she was told she could only report a missed break if it was entirely missed rather than merely interrupted, the director of nursing discouraged her from reporting missed meal breaks, and other patient care employees at Blumenthal had meal breaks interrupted. (Doc. 24-2.)

Cole supports her request for certification with four additional "declarations," which are in fact unsworn statements from four employees who worked at five other facilities operated by Choice.[1] (Docs. 24-5; 24-6; 24-7; and 24-8.) These individuals

---

[1] Henrietta Spellman worked at UHC Greenville in North Carolina (Doc. 24-5), Janil McFadden worked at UHC Concord in North Carolina (Doc. 24-6), Jim Dewberry worked at UHC Fuquay Varina and UHC Lillington in North Carolina (Doc. 24-7), and Mary Stone worked at St. Andrews Brian Center Nursing Care in South Carolina (Doc. 24-8).

state that they were interrupted during their meal breaks, their supervisors were aware of this, and they did not receive training or information regarding reporting a missed meal break. (Id.) These statements do not provide the individual's job titles, only that they worked in "care giver role[s]." (Id.)

The parties engaged in limited discovery, exchanging document requests and interrogatories. (Doc. 27-7.) In support of her motion, Cole includes a copy of the Defendants' meal break policy at her facility, noting that a one-half hour unpaid lunch break is scheduled for regular full-time employees and that the breaks "are not considered time worked and are therefore unpaid." (Doc. 24-4 at 2.) The policy provides that "[e]mployees are not permitted to leave the premises during break periods without management authorization," and employees authorized to leave must clock out and clock back in on return to the facility. (Id.) The timekeeping policy further provided:

PLEASE BE ADVISED

- Any shift lasting a total of 6 hours or more will have a 30 minute lunch deducted and any shift lasting 14 hours or more will have (2) 30 minute lunches deducted (an hour total). Clocking out for lunch is not required if you stay on the premises.

- Should you leave the facility premises for ANY reason that is not work related i.e. meal break, personal errands, etc. you ARE REQUIRED to clock out when leaving and clock in when returning.

3

- Any corrections you may need to make to your time card MUST be completed with appropriate paperwork WITH A SUPERVISOR'S signature.

- Continually missing punches will result in disciplinary actions.

(Id. at 6.)

Cole contends that patient care workers at Defendants' facilities were not relieved of all duties during their unpaid meal breaks because other staff members frequently interrupted their breaks to request assistance with patient care. (Doc. 24-2 ¶¶ 7-8.) Cole states that supervisors were aware of these frequent interruptions as they either observed them or were the ones causing the interruptions. (Id. ¶ 8.) Cole also argues that the employees' potential recourse for these interruptions, indicating that they did not receive a meal break on the Defendants' timekeeping software, was inadequate because supervisors at Defendants' facilities "actively discourage" employees "from reporting they did not receive a full, compliant meal break." (Doc. 24 at 7.) Cole also claims that her director of nursing discouraged her from reporting missed meal breaks and that management disregarded some of her missed meal break forms. (Doc. 24-2 ¶ 11.) Cole concludes that Defendants failed to provide patient care workers with bona fide, interruption-free meal breaks and that by requiring their workers to remain on site and

4

functionally on call, Defendants violated the FLSA. (Doc. 24 at 7.)

Cole seeks conditional certification of a class of relevant hourly employees who were subject to the meal break deduction policy and were employed from July 11, 2021, through May 31, 2024, and defines the putative class as follows:

> All non-exempt hourly paid patient care employees that worked at a facility managed by Choice Health Management Services, LLC at any time between July 11, 2021 and May 31, 2024 that were subject to an automatic meal period deduction and worked in at least [one] of the following job titles: Certified Nursing Assistant, Food and Nutrition Services Staff, Hospitality Aide, Licensed Practical Nurse, LPN Coordinator, Medication Technician, Memory Care Certified Nursing Assistant, Nurse Aide in Training, Patient Care Coordinator, Personal Care Aide, QAPI Nurse, Registered Nurse, Resident Care Director, Restorative Aide, RN Supervisor, Temporary CNA, Temporary LPN, and Wound Care Nurse.

(Doc. 23 at 1; Doc. 24-1 at 6-7 (Defendants' interrogatory responses noting these positions are covered by the meal break policy).)

Defendants challenge Cole's presentation of evidence. (Doc. 27.) They note that the four witnesses who provided statements were not disclosed in discovery as required by Federal Rule of Civil Procedure 26. (Id. at 19.) Defendants also provide evidence that two of the individuals, Jim Dewberry[2] and Janil McFadden, worked very few shifts with meal break deductions: Dewberry worked

---

[2] Defendants refer to Dewberry as James, though his statement refers to himself as Jim. (Doc 24-7.)

Case 1:24-cv-00576-TDS-JEP    Document 29    Filed 08/15/25    Page 5 of 21

twelve shifts with meal break deductions, and McFadden worked only three shifts with meal break deductions (and only worked four shifts total at a Choice facility). (Doc. 27-6 ¶¶ 16-26.) Defendants assert that the declaration of Mary Stone is irrelevant because she worked at a facility Choice operated in South Carolina while "Cole argues for a certification of a collective of workers at Defendants' facilities in North Carolina." (Doc. 27 at 22 (internal quotation marks omitted).) Defendants further provide declarations noting that each facility had its own management who were responsible for implementing Choice's policies, that Choice had a lawful meal break policy and did not have a company-wide policy of discouraging meal breaks or refusing to compensate employees who missed their breaks when helping patients, that employees were not on call during meal periods, and that its billing system included procedures for employees who did not have an uninterrupted meal break to seek compensation. (Doc. 27-6.) Finally, Choice argues that it is not responsible for the decisions of the supervising employees of any individual facility. (Doc. 27 at 14-15.)

Cole responds that the burden for certification is lenient at this early stage, that she has provided at least a modest factual showing to support certification, that factual questions should be reserved for the decertification stage (should Defendants seek it), and that the question of whether Choice should be liable as

a joint employer is a merits issue inappropriate for resolution at the certification stage.  (Doc. 28 at 7-12.)

## II.  ANALYSIS

For any violation of the FLSA, an employee may bring a collective action on behalf of herself or "other employees similarly situated."  29 U.S.C. § 216(b).  To become part of the litigation, each "similarly situated" employee must file his or her written consent with the court.  Id.  Employees are "similarly situated" when they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions."  Solais v. Vesuvio's II Pizza & Grill, Inc., No. 1:15CV227, 2016 WL 1057038, at *5 (M.D.N.C. Mar. 14, 2016) (citation modified).[3]

FLSA class certification typically takes place in two stages. Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 298-99 (W.D.N.C. 2013); Hollis v. Alston Pers. Care Servs., LLC, No. 1:16CV1447, 2017 WL 3327591, at *2 (M.D.N.C. Aug. 3, 2017) (citation omitted). The first stage is conditional certification, during which the court determines whether the employees' claims are "similarly

---

[3] "The term 'similarly situated' is not defined in the FLSA and the Fourth Circuit has not articulated how the 'similarly situated' requirement of § 216(b) should be applied." Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 298 (W.D.N.C. 2013) (citing Gregory v. Belfor USA Grp., Inc., No. 2:12CV11, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012)).

7

situated" such that the distribution of court-approved notice to possible class members is merited. Long, 292 F.R.D. at 298; Clark v. Williamson, No. 1:16cv1413, 2018 WL 1626305, at *2 (M.D.N.C. Mar. 30, 2018) (citing Hollis, 2017 WL 3327591, at *2). At the conditional certification stage, "[c]ollective action plaintiffs are not bound by Rule 23's requirements of numerosity, commonality, typicality and adequacy; they need only demonstrate that they are 'similarly situated' to proceed as a class." Clark, 2018 WL 1626305, at *2 (quoting Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *1 n.8 (D. Md. Nov. 18, 2009)); Solais, 2016 WL 1057038, at *5 n.6. If conditional certification is granted, the putative class members are provided notice of the lawsuit and the opportunity to opt in, and discovery is conducted. Long, 292 F.R.D. at 299. If the defendant then files a motion for decertification, the court moves to the second stage, in which the court applies a "heightened fact specific standard to the 'similarly situated' analysis." Id. (citing Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 563 (E.D. Va. 2006)).

The conditional certification standard is "fairly lenient," because "the court, and the parties, have minimal evidence at this point in the proceedings." Adams v. Citicorp Credit Servs., Inc., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (citation and internal quotation marks omitted). While lenient, conditional certification is not a "rubber-stamp approach," and "[m]ere

8

allegations will not suffice; some factual evidence is necessary." Id. (citations omitted). To meet this burden, the plaintiff "need only make a relatively modest factual showing that a common policy, scheme or plan that violated the law exists." Id. (citation modified). The evidence must amount to "more than vague allegations with meager factual support," but "need not [] enable the court to determine conclusively whether a class of similarly situated plaintiffs exists." Id. (citation omitted). And at this stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Solais, 2016 WL 1057038, at *6 (quoting Adams, 93 F. Supp. 3d at 454).

Defendants argue that because some discovery has occurred, the court should apply an intermediate standard to Cole's motion for conditional certification. Whether the court would apply a heightened standard on another record, the court declines to do so here. Discovery was limited – there were no depositions, only document production and interrogatories. See, e.g., Clinton v. Government Employees Insurance Co., No. 2:16cv430, 2017 WL 3025558, at *2 n.2 (E.D. Va. July 14, 2017) (concluding that applying a "heightened standard is inappropriate in this case because significant discovery has yet to be conducted" (citations omitted)).

Cole argues that she has met the "lenient standard" for conditional certification. She contends that the evidence supporting her motion demonstrates that Defendants have centralized control over key employment policies, including the timekeeping policy at issue in this case. Cole asserts that the six locations represented in the witness statements she submitted "represent approximately half of Defendants' total CNA workforce." (Doc. 24 at 15.) And those witness statements provide evidence that employees from those six locations worked through at least three unpaid meal breaks per week on average. (Id.) Cole contends that her declaration and the four witness statements demonstrate that "Defendants did not fully explain to their workforce that if they were subject to being interrupted [during their meal break], though not interrupted, such meal break is compensable." (Id.) She further argues that all of Defendants' hourly patient care employees perform largely the same job duties and use the same software system for timekeeping. (Id.)

Defendants respond that Cole has not offered evidence that another company policy worked with the automatic meal break deduction policy to deprive employees of pay earned during a meal break. (Doc. 27 at 11.) They explain that automatic meal break deduction policies are "perfectly lawful under the FLSA" and that Cole must show that employees were "victims of a common policy or plan" that worked in combination with the meal break deduction

policy. (Id.) Specifically, they assert that there is no evidence of an on-call policy during meal breaks or a policy discouraging reporting missed or interrupted meal breaks. (Id. at 12-16.) Defendants also argue that the four witness statements relied on by Cole should not be considered by this court because Cole failed to disclose the witnesses according to Rule 26. (Id. at 19.) If the court does consider the statements, Defendants contend it should afford the evidence little weight, given that the statements are nearly identical forms and are unsworn. (Id. at 20-22.) Defendants also point to inconsistencies between their own records of the witnesses' employment history and the witnesses' statements. (Id. at 22.) Finally, Defendants argue that Cole is not similarly situated to other patient care employees because of differences in employees' job responsibilities. (Id. at 24-25.)

The court starts with the four witness statements submitted by Cole. If a party fails to identify a witness as required by Rule 26, it is not permitted use that witness in support of a motion unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). In making this determination, the court considers several factors:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

_Hoyle v. Freightliner, LLC_, 650 F.3d 321, 329 (4th Cir. 2011) (quoting _S. States Rack and Fixture v. Sherwin-Williams Co._, 318 F.3d 592, 596 (4th Cir. 2003)).

While Cole did not provide a suitable explanation in her reply as to why she failed to specifically disclose her four witnesses, the court concludes the failure to disclose was harmless. The witnesses are central to Cole's motion. It is also early in the litigation, and Defendants will have the opportunity to depose the witnesses during discovery. Perhaps more importantly, the witnesses are employees of the Defendants, and as such, Defendants were able to investigate the statements of the witnesses by accessing their own records. Finally, Cole disclosed a dozen witnesses to Defendants, and there is no evidence that Defendants chose to depose any of them during the discovery period. (Doc. 27 at 7.) So, it is unlikely that Defendants would have deposed these witnesses even if they had been disclosed.

That the four witness statements were unsworn is not fatal to Cole's motion. It would surely be the better practice to rely on sworn statements. But Cole can meet her conditional certification burden with her sworn declaration and the statements of the four others that provide similar supporting facts. See _Lee v. Metrocare Servs._, 980 F. Supp. 2d 754, 760–62 (N.D. Tex. 2013) (citing cases for the proposition that evidence need not be presented in admissible form at the notice stage); _Hernandez v. KBR Servs._,

LLC, No. 3:22-cv-530, 2023 WL 5181595, at *4 (E.D. Va. Aug. 11, 2023) ("The evidentiary standard for the conditional certification phase is a low bar and affidavits in support of motions for conditional certification need not meet all evidentiary standards for admissibility." (citations omitted)); Clark, 2018 WL 1626305, at *3 ("Courts in the Fourth Circuit that have addressed the issue have held that hearsay evidence supporting a motion for conditional certification may be considered so long as it is based on personal knowledge." (citation modified)); White v. MPW Indus. Servs., Inc, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (concluding that "affidavits submitted in support of a motion for conditional certification . . . need not meet the standard set forth in Rule 56(e)" and that "requir[ing] more at this stage of litigation would defeat the purpose of the two-stage analysis"); Crawford v. Lexington-Fayette Urb. Cnty. Gov't, No. 06-299, 2007 WL 293865, at *1-3 (E.D. Ky. Jan. 26, 2007) (considering, for the purpose of evaluating whether conditional certification should be granted, unsworn survey responses submitted by the plaintiff).

"[A]utomatic meal-deduction systems are perfectly lawful under the FLSA." Marshall v. Novant Health, Inc., No. 3:18-cv-00633, 2020 WL 5577888, at *7 (W.D.N.C. Sept. 17, 2020) (citation omitted); accord Chapman v. Saber Healthcare Grp., LLC, 623 F. Supp. 3d 664, 675 (E.D. Va. 2022). Therefore, to state an FLSA claim, and thus to seek conditional certification, a plaintiff

13

must show that an otherwise permissible deduction policy operated in conjunction with some other policy or practice to deprive the employee of pay for work performed during the unpaid meal break. Chapman, 623 F. Supp. 3d at 675.

Though a close question, the court finds that Cole has made the modest showing required for conditional certification. Cole's evidence demonstrates that Defendants had an automatic meal break deduction policy (Doc. 24-4) that, in combination with an alleged lack of communication and training about the policy and discouragement from supervisors with respect to reporting missed meal breaks, deprived Defendants' CNA employees of pay earned during missed meal breaks. In her sworn declaration, Cole states that her meal breaks were interrupted daily and that her supervisors were aware of these interruptions. (Doc. 24-2 ¶¶ 6, 8.) She also asserts that she was told she could only report a missed break if it was entirely missed rather than just interrupted, that the director of nursing discouraged her from reporting missed meal breaks, and that other patient care employees at Blumenthal had similar experiences. (Id. ¶¶ 9-12.) Cole's four witnesses assert in their statements that they, too, were interrupted during meal breaks, their supervisors were aware of the interruptions, and they did not receive training or information regarding reporting a missed meal break. (Docs. 24-5, 24-6, 24-7, 24-8.) The employees were also using the same timekeeping

14

system and were subject to the same general policies of Choice. While the four additional witnesses do not state their job titles, Choice's evidence confirms that each was employed at a Choice facility as a CNA and would have been subject to Choice's overall policies. (Doc. 27-6 at 5-9.)

Defendants' responses to Cole's arguments primarily ask this court to weigh the evidence and make factual determinations. Defendants raise several questions that may cast doubt on Cole's effort to sustain certification. But these issues must await resolution at a later stage, because this early notice stage is not designed for weighing the evidence, resolving factual disputes, or reaching the merits of Plaintiff's claims. See Solais, 2016 WL 1057038, at *6 (citation omitted); Strickland v. Charleston Area Med. Cntr., Inc., No. 2:23-cv-00676, 2024 WL 1996133, at *4 (S.D.W. Va. May 6, 2024).

However, Cole's proposed collective class definition extends beyond the proof she submitted and beyond the claims of the current complaint. Cole seeks to include all "paid patient care employees" that worked at Choice facilities in her proposed collective, but she has only submitted evidence from employees who worked as CNAs who claimed that their ethical duties required them to work and be available over the lunch hour. (Docs. 24-2; 24-5; 24-6; 24-7; 24-8.) Without evidence regarding the duties of the specific "patient care employee" positions she seeks to add to the collective, the

15

court is unable to conclude that the positions are sufficiently similar to warrant inclusion in the action. See Chapman, 623 F. Supp. 3d at 677. This is especially important given that automatic lunchtime deductions are lawful under the FLSA unless they operate in tandem "with some other policy or practice to deprive employees of pay for work performed during unpaid meal breaks." Id. at 675. Cole has suggested that the automatic lunchtime deduction policy applied to all "patient care employees" at Choice facilities, but she has not demonstrated that employees with each discrete job title she proposes were subjected to practices that actually deprived them of bona fide meal breaks. Accordingly, Cole's proposed collective will be limited to Defendants' employees who had the same job title as Cole and her four declarant witnesses: CNAs.

Second, Cole asks for the collective class to cover all "facilit[ies] managed by Choice" during the relevant period. (Doc. 23 at 1.) This, too, is overbroad. Cole has only submitted evidence from CNAs at six Choice facilities: UHC Greenville, UHC Concord, UHC Fuquay Varina, UHC Lillington, Blumenthal and St. Andrews Brian Center Nursing Care. "When declarations come exclusively from a small, geographically homogenous group of declarants, conditional certification of a nationwide collective is inappropriate if the declarants lack personal knowledge about the policies or practices at other offices." Chapman, 623 F. Supp.

16

3d at 676 (citations omitted). Defendants report that each Choice facility "had its own local management employees" who were charged with "implementing Choice Health policies and dealing with specific hiring, training, and timekeeping issues." (Doc. 27-6 ¶ 7.) Because the statements Cole filed do not purport to detail personal knowledge of the conditions of Choice facilities other than those where the signers worked, these documents do not support expanding the collective to encompass all CNAs at all Choice facilities. Based on the declarations before the court, the court can conclude that CNAs at Blumenthal, UHC Greenville, UHC Concord, UHC Fuquay Varina, and UHC Lillington, similarly situated to Cole. But Cole has not provided any evidence detailing the conditions CNAs were subject to at Choice's remaining facilities, so broadening the collective to include them would be inappropriate.

Further, Cole provided a statement from Mary Stone, who worked at a Choice facility in Columbia, South Carolina. (Doc. 24-8.) Defendants object that Stone's declaration is "irrelevant" to Cole's arguments for certification. (Doc. 27 at 22.) They point out that Cole's brief repeatedly argues for certification of a collective of employees of "Defendants' facilities in North Carolina." (Id. (quoting Doc. 24 at 1).) Moreover, Cole's complaint specifically limits her claims to North Carolina facilities. (See Doc. 1 ¶¶ 25, 67-78.) Cole's reply did not address this point. Defendants are correct that Cole's claims

17

have been limited to North Carolina facilities, and Cole's complaint focuses solely on the facilities Choice "operates . . . in the state of North Carolina that also use a similar automatic meal break deduction policy as Blumenthal." (Doc. 1 ¶ 67.) That her claims are so limited is also reflected by the complaint's inclusion of a separate claim under the North Carolina Wage and Hour Act and the fact that her brief in support of certification mentions only North Carolina. (Doc. 1 ¶¶ 103–109; Doc. 24 at 4 ("Like Cole, the putative collective members are other current and former non-exempt patient care employees who worked for Defendants in North Carolina . . . .") (emphasis added).) The court thus declines to expand Cole's case beyond the scope of her complaint at this stage. Consequently, her class will be limited to those North Carolina facilities for which a declaration or statement was provided.

The court has reviewed Cole's proposed notice and related forms. (Docs. 24-9; 24-10; 24-11.) Cole requests that the court "authorize notice by mail, email, and text message" as well as "establishment of a website to permit members of the Proposed Collective to view the Notice as well as to electronically submit their Consent to Join forms." (Doc. 24 at 19.) Cole argues that the "non-mail notice methods" are "particularly appropriate in this case because the Defendants may not have up-to-date mailing addresses for the putative class members given their sale of the

18

facilities in question in May of 2024." (Id. at 19-20.) Cole observes that "mailing addresses may change," but email addresses and phone numbers "tend to remain stable." (Id. at 20.) Additionally, Cole requests that the court approve issuance of a reminder notice halfway through the opt-in period. (Id.) Defendants have no challenge to the notice apart from their opposition to certification.

Courts have discretion to permit limited discovery to facilitate notice in FLSA collective actions. See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 201 (S.D.N.Y. 2006) (collecting cases). While courts have routinely approved requests for home addresses and email addresses, courts have been more reluctant to authorize the disclosure of other private information, such as dates of birth, social security numbers, and telephone numbers. See, e.g., Hart v. Barbeque Integrated, Inc., 299 F. Supp. 3d 762, 772 (D.S.C. 2017) ("Although email addresses are more routinely disclosed, district courts in this circuit have required a showing of a 'special need' before requiring the disclosure of telephone numbers." (citations omitted)); Byard v. Verizon W. Virginia, Inc., 287 F.R.D. 365, 376 (N.D.W. Va. 2012) ("This Court has previously held that the plaintiffs must establish[ ] a need for this type of information before it may be turned over." (internal quotations and citation omitted)). That concern is relevant here; "the added reliability of text messaging does not outweigh its

19

invasiveness, particularly when email notice is available." Chapman, 623 F. Supp. 3d at 681.

Cole has not demonstrated that text messaging is necessary to effectuate notice of this action, at least at this point. Potential plaintiffs have privacy interests, and, as Cole seems to acknowledge by equating the durability of email addresses to that of phone numbers, notice via email appears to be a similarly effective but less intrusive method of notifying would-be plaintiffs. Therefore, the court grants Cole's request to issue notice via mail and email and to produce and publish a website that displays the notice and allows visitors to submit their Consent to Join forms. The court also approves Cole's request to issue a reminder notice midway through the opt-in period, but only via email. Cole's request to issue notice via text message is denied at this time. In all other respects, the notice is approved.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Cole's motion for conditional certification (Doc. 23) is GRANTED IN PART, and a FLSA collective is certified as follows:

All non-exempt hourly paid certified nursing assistants that were subject to an automatic meal period deduction and worked at one of the following facilities managed by Choice Health Management Services, LLC at any time between July 11, 2021, and May 31, 2024: Blumenthal

20

Nursing and Rehabilitation Center; Universal Health Care and Rehabilitation Center; Universal Health Care/Fuquay-Varina; Universal Health Care/Greenville; and Universal Health Care/Lillington.

IT IS FURTHER ORDERED that Cole's proposed notice documents and notice plan, as modified in accordance with this memorandum opinion and order, are APPROVED (Docs. 24-9, 24-10, 24-11.) The opt-in period shall extend to ninety (90) days from the date notice is first emailed or mailed to putative class members.

IT IS FURTHER ORDERED that John Neuman and Wilson F. Fong are appointed as Class Counsel and Katrina Cole is appointed as class representative. Defendants are directed, to the extent they have not already done so, to produce the names, home addresses, and email addresses for the collective class.

          /s/ Thomas D. Schroeder
          United States District Judge

August 15, 2025